I'm going to move now to Appeal 24-1177. This is Jergenson v. Inhale International Limited. Mr. Teran, we'll recognize you first. Is it Teran or Teran? Teran. Teran, thank you. Good morning. May it please the Court, my name is Louis Teran. I'm here for Inhale International Limited. I'd like to cover two issues here today, the main one being that the District Court, our belief is that the District Court erroneously relied on the presumption that is afforded to trademark registrations that are issued by the USPTO. Don't we want to incentivize parties who don't have a good case to voluntarily dismiss their case? That is correct, Your Honor, but the question here is whether the claims to begin with were meritorious, and that's what makes this case exceptional, because they were not. The reason is because that presumption that the District Court relied on is based in part on verified statements by an applicant of a trademark application that states under oath, under subject of perjury, that they are in fact using the trademark in commerce, that they have a good faith belief that they're the owners of the trademark, that they have a good faith belief that nobody else has rights to the use of the trademark in commerce. So there's a presumption that an applicant of a trademark registration is a good faith actor. The evidence in this case showed otherwise. When you take that verified statement out, then the presumption that a trademark registration is valid goes away, because the facts in this case show that the appellee, as the applicant, was in fact not using the trademark in commerce when he submitted the application, when he submitted the verified statement. I certainly see your argument, and you're making it in a compelling manner. We're sitting, though, as an appellate court, abuse of discretion, standard review. We've got a District Court that's been presiding over this litigation, and that District Court is making a prudential call whether or not this case was weak, whether or not the conduct was out of bounds. We have to be somewhat deferential to the District Court who's been presiding over the case, correct? Correct. That is correct, Your Honor, and that's why I think my, you know, I have an uphill battle to fight, for sure, and I recognize that. But I want to point out to various parts of the record that the District Court made error. One of them, the reliance on the presumption of validity of the trademark. The other one, the District Court statement, in its order, that the appellee began using the mark and then submitted a trademark application to the USPTO. That was inaccurate, and that is contrary to the verified statement that the appellee submitted to the USPTO, which forms the basis for this presumption of validity of a trademark registration. And that is precisely my point in this case, is that this trademark was essentially stolen, taken away from another party, a third party, Mr. Light Rain. He had acquired this trademark in the 1980s. He used the trademark continuously for 30 years, and then he stopped using it, as the evidence shows, but he did not abandon the trademark because there was no, the requisite intent was not there. And I think the District Court did not see that, did not recognize those facts that were presented to the District Court, and instead relied on the mere fact that a registration was issued by the USPTO, therefore this trademark registration must be valid. We have the opportunity to rebut that presumption, and we rebutted that presumption by showing that the verified statement that was submitted to begin with by the appellee was false. That should be enough to rebut that presumption. So you're asking us to do a deeper dive on the facts than the District Court did? Right, not just a deeper dive, but just, yes, I mean, deeper dive into the facts, into the undisputed facts in this case. There is no dispute by the appellee that he was not using the trademark in commerce when he submitted the verified statement. There is no dispute by the appellee that he had first-hand knowledge that Mr. Lightrain was actually the rightful owner of the trademark. But he testified, didn't he, that he believed that Mr. Lightrain's business closed in 2018? That is correct. He testified that Mr. Lightrain stopped using the mark in 2018, but he also testified that Mr. Lightrain had indicated to him a clear intent to resume use of the trademark in the future. And that is what's required for abandonment of a trademark. You can't, in order to attain a trademark, that trademark that is owned, in order to attain a trademark that is being used by somebody else, that trademark must first be abandoned before it can be up for grabs. Can you go back just one second? You said, so he, you acknowledged that he did testify that he believed Mr. Lightrain shuttered his business in 2018, but you added something there and the something was that, did he then testify that the business is going to be restarted? Right. He had it, he testified that he had a conversation with Mr. Lightrain and he indicated to Mr. Lightrain, hey, let's join forces. Let's partner up. Let's go into business and restart this business together. And Mr. Lightrain said, I want nothing to do with you. I'm going to start selling this pipe using this mark again. Right. That was, that was, that was in the record. I think I pointed that out in my briefs. Yeah, I think I remember something like that. Okay. So there was a clear intent that was communicated to the appellee that the trademark, maybe it was stopped being used. It was not abandoned because that requisite level of intent was not there. Litigation conduct is the argument that you're offering that there was discovery just for discovery's sake. That's right. So the other, the other argument, the other position is that the district court erroneously held that the appellee could not have known the extent of damages until after discovery when in fact there was a TRO that was issued at the very start of the case that granted the appellee access to records related to damages from third parties. And there's no indication on the record that the third parties, in this case Alibaba, failed to comply with that order. There's no indication and that was never brought to the court's attention that Alibaba was refusing to comply with that TRO. In fact, the communications that are on the record between appellee's counsel and Alibaba show that records were produced. So to, to say that, well, the appellee had to do conduct discovery to understand the extent of the, of the damages was erroneous. The TRO was there to begin with. Um, and I will reserve the rest of my time. Very good. Thank you, Mr. Tran. Mr. Tighe, we'll move to you now for a argument from the appellee. Thank you. As your Honor pointed out, this is an abuse of discretion review. And what counsel and appellant are asking this court to do is to look beyond what the district court considered to entertain and resolve on the papers, a contested issue between a third person, Mr. Lightrain and Mr. Jergensen, that would have been and could be resolved in the USPTO. Mr. Jergensen asserted ownership of the trademark. Mr. Lightrain, who's not a party to this case, is reportedly in dispute with that. The district court had a complaint who explained its reasoning for why it was asserting trademark. It filed, requested a TRO. The court did not grant relief at first as to Inhale, because Inhale came into the case, gave the TRO. It didn't. It granted a preliminary injunction after Inhale addressed the merits of the complaint, filed a counterclaim, and argued, filed a motion for summary judgment, presenting all of these issues of fraud, not in the same particulars that were later presented in this court, but the theory of fraud that motivated the defense was that this product was drug paraphernalia. It is a pipe that is used by people who smoke cannabis. It's classified as 034 in an international classification for pipes, and there was a lot of litigation over whether that classification was appropriate and the dispute as to whether it was drug paraphernalia would override the trademark. The court asked for and received supplemental briefing on that issue before granting the preliminary injunction. Then the court had also entered an order staying consideration and briefing on the summary judgment motion until the parties had resolved the motions to dismiss on the counterclaim. The court found that the counterclaims did not state claims that the court would entertain. There were discretionary decisions whether to take a declaratory judgment on matters that overlapped with the complaint, and there was also a failure to state the claim for fraud. It did not meet the pleading requirements. Those were dismissed. The dismissal were then reduced into a judgment on plaintiff's motion for voluntary dismissal with prejudice. It was opposed, that request for voluntary dismissal with prejudice was opposed for purposes of advocating and pursuing the counterclaims. No appeal was taken from the order rejecting that. This is an appeal from an order rejecting a request for fees after dismissal of the case when there's no question, there's no dispute, no one challenged the court's discretion not to take the counterclaims. It was not an extraordinary case that warranted the district court's consideration of the merits. The parties ran into a wall called lack of recovery after there was an impediment of about $10,000 estimated just to set up the deposition. Mr. Judge submitted a statement to the court denying that he got sales information from Alibaba. The injunction related to the offering of sale. There was a dispute between the parties whether the Alibaba website revealed an offer to sale, and that dispute turned upon whether you relied upon the Alibaba website that existed when plaintiff filed the complaint, or whether you filed on the revised Alibaba website after and in connection with the motion for fees for what was supposed to be an extraordinary case. This was a case where a person with a product found that others were selling competing products, did an internet search to see what those competing products were, filed a complaint saying these are the products that we believe are being offered for sale, worked out settlements with some, and decided not to pursue this claim against this other well-entrenched defendant when it looked like, and the district court had admonished the parties to keep their eyes on, the monetary value at stake with respect to sales. If the court has any further questions, I'll be glad to answer them, but I think this is a straight abuse of discretion, and the court exercised it properly. Thank you, Mr. Tighe. Mr. Tran, we'll move back to you now for rebuttal argument. Thank you, Your Honor. The essence here, the way I see it, and counsel indicates, the counterclaim was not filed because the case was voluntarily dismissed before we could do that, right? We had evidence. The evidence came out. The evidence related to the true ownership of the trademark came out during discovery, in deposition. As we're about to present that to the court, the record doesn't show this, but the case was voluntarily dismissed. The reality came out, right? The plaintiff here, the appellee filed this case against 251 defendants. Only one stood up to them. Everybody else caved, and they filed this claim with unmeritorious claim, an unmeritorious claim that they had ownership of a trademark when he knew that he didn't. At the very least, the justice requires that there be an acknowledgment that within the time period relevant here, Mr. Lightrain was the rightful owner of the trademark, because the evidence, undisputed evidence, indicates as such. So there was no meritorious claim to begin with, making this case exceptional. With that, Your Honor, if you have any questions. Thank you, Mr. Turan. Thank you, Mr. Tide, in case of taking a revisement. Thank you.